**UNITED STATES of America, Appellee,**

v.

**Frank Robert HAMLIN, Appellant.**

**No. 20180.**

United States Court of Appeals, Eighth Circuit.

Oct. 13, 1970.

Joseph W. Moylan, Omaha, Neb., for appellant, and filed briefs.

William K. Schaphorst, Asst. U. S. Atty., Omaha, Neb., for appellee, and filed brief; Richard A. Dier, U. S. Atty., Omaha, Neb., was on the brief with Mr. Schaphorst.

Before MATTHES, Chief Judge, and HEANEY, Circuit Judge, and VAN PELT, Senior District Judge.

MATTHES, Chief Judge.

In a multiple count indictment, Frank Robert Hamlin was charged with using the mails to further and carry out a scheme and artifice to defraud in violation of 18 U.S.C. § 1341 and use of a fictitious name in violation of 18 U.S.C. § 1342.[1] He was found guilty of the offense alleged in Count I and has appealed from the judgment of conviction. Imposition of punishment was suspended and appellant was placed upon probation for a period of four years.[2]

Count I as eventually constructed charged that the appellant had devised a scheme or artifice to defraud and to obtain money by means of false and fraudulent practices from ten named persons and companies, and for the purpose of executing the scheme or artifice had used the mails. A number of overt acts committed in perpetrating the fraudulent scheme were delineated in the indictment. Paragraph 9 of Count I as initially cast alleged that appellant had deposited in the mails letters to seven different

1. Counts I, III, IV and V charged violations of 18 U.S.C. § 1341, mail fraud. Count II charged violation of 18 U.S.C. § 1342, use of a fictitious name. Counts III, IV and V were dismissed before trial and Count II was dismissed by the court at the close of the Government's case.

2. Appellant, who was 29 years of age at the time of trial, November 13, 1969, had been convicted previously of armed robbery and had served a sentence in the Nebraska state penitentiary.

individuals who were named, in furtherance of the fraudulent scheme. On motion by the Government six of the listed mailings were deleted so that there remained only the letter mailed from Nebraska to Francis Gilmere at Atlanta, Georgia.

Since we are not concerned with the sufficiency of the evidence to sustain the verdict, we forego a detailed recitation of the pertinent facts, proceeding instead to summarizing the scheme devised by the appellant, described in the indictment, and to demonstrate the devious methods pursued by him in mulcting a number of persons of a substantial amount of money.[3]

In August of 1967 appellant formed a business named Investors Forum of Omaha and for some reason not readily apparent from the record designated himself as James W. Eagles, Assistant President and Chairman of the Board. The ostensible purpose of the business was to provide a meeting ground for informed willing investors and individuals needing capital to develop or expand a business, project or idea.

To attract potential customers, appellant placed advertisements in newspapers throughout the country offering venture capital to persons with promising projects and ideas. Upon receiving a response to the advertisement, appellant would mail to the inquiring party a brochure describing the services purportedly provided by Investors Forum to its "unique club" of investors and to those needing capital.[4] If the potential customer responded by sending certain information and a $10 fee for consideration of the project or idea, appellant

would then negotiate the amount of further payments by the customer for the firm's services. The record reveals that his plan proved successful (to him) as a number of individuals who needed capital paid sums of money to appellant but not one received any value in return.

The experience of Francis Gilmere of Atlanta, Georgia is typical of the operation of the scheme. Gilmere observed an Investors Forum advertisement in the Chicago Tribune at a time when he was searching for capital to finance the construction of a housing development and shopping center. In response to his initial letter to Investors Forum, Gilmere received the brochure referred to in the margin. In subsequent correspondence Gilmere paid the $10 initial fee and later mailed a check for $1700 for the preparation and mailing of the project presentation to the investors. The check was deposited and charged to Gilmere's account. After some delay, appellant assured Gilmere that the project was in the final stages of preparation and Gilmere would soon have a copy for his approval. At the time of trial nearly two years later, Gilmere had not received any copies of the presentation nor any consideration for the amount paid appellant.

Other evidence bearing upon the issues presented will be reviewed in disposing of the contentions relied upon for reversal and a new trial.

### I.

We are first confronted with the claim that the postal inspector who participated in the investigation of the appellant's activities failed to apprise him of his rights as delineated in Miranda

---

3. Six witnesses testified that they had paid appellant for his services sums ranging from $360 to $2510 for a total of $6250.

4. The brochure consisting of four pages was captioned "PRESENTED TO INVESTORS WHO HAVE ONE MILLION (1,000,000) DOLLARS OR MORE FOR VENTURE CAPITAL AND WHO CONTROL OVER $500,000,000 IN ASSETS." The first paragraph stated:
 "Investor's Forum is an intermediary between Members and innovators of projects. Investor's Forum of Omaha is a private, properly designed institution to serve as a meeting ground for informed willing investors and the individual with a project, proposal, idea or business that has promise, if needed capital is provided."
 The brochure also indicted that Investors Forum had a consulting staff of experts in the marketing and technical fields.

v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). From this premise appellant submits that there was testimony and some documentary evidence erroneously admitted over timely objection. We disagree. In the first place appellant's basic premise is unsound. This is so because at no time was appellant in custody of the postal inspector or any other officer, neither had he been deprived of his freedom in any significant way.

The facts of the matter are that on April 26, 1968, appellant appeared at the office of the postal inspector, voluntarily and uninvited, for the purpose of seeking the approval of Inspector Trumbull of a new brochure which he stated he had discussed with his retained attorney and was planning to use in his business. Inspector Trumbull informed appellant that he had no authority to rule on the legality of the brochure but since he had received some inquiries in regard to Investors Forum he desired to discuss with appellant the method of his operations. At this meeting and before the interview, the Inspector advised appellant that he had a right to remain silent, that anything he might say could be used against him in a court of law, and that he had a right to counsel before and at the time of interrogation, but failed to indicate that if appellant could not afford an attorney one would be appointed for him. After appellant emphatically stated he understood his rights, Trumbull requested a list of the investors. Appellant indicated that he could furnish some addresses. On May 15, 1968, appellant, in response to another request for a list of investors, showed the Inspector a set of addressograph plates and indicated he would compile a set of cards with the understanding that the information on the cards would not be disclosed to or used by other persons, and that the cards would be returned after they had served their purpose. On May 21, 1968, appellant called the Inspector and informed him the cards were ready. Shortly thereafter the Inspector received a box containing 993 cards showing the names of purported investors. Appellant was again assured that the cards would not fall into the hands of others. The Inspector subsequently used the cards to contact several of the persons listed for the purpose of ascertaining whether they had received presentation letters. Trumbull later delivered the cards to the United States Attorney during the time the case was being prepared for trial. Contrary to the representation in the brochure, none of the persons contacted who were on the list had authorized appellant to represent them.

In light of the foregoing facts, we find no substance in the *Miranda* warning issue. The warnings delineated in *Miranda* do not apply to a situation where, as here, the subject is not in custody and is not deprived of his freedom in any significant way. "General on-the-scene questioning as to facts surrounding a crime *or other general questioning* of citizens in the fact-finding process is not affected by our holding." *Miranda*, supra at 477, 86 S.Ct. at 1629 (emphasis supplied); Cohen v. United States, 405 F.2d 34 (8th Cir. 1968), cert. denied, 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478 (1969); United States v. Squeri, 398 F.2d 785 (2d Cir. 1968); White v. United States, 395 F.2d 170 (8th Cir.), cert. denied, Kubik v. United States, 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968).

Although the *Miranda* issue has received full consideration we would be justified in summarily rejecting this claim of error because of the failure of appellant to raise it at any stage of the trial. The question whether and to what extent appellant was warned of his rights was injected by the trial judge, but the issue was not pursued by appellant.

## II.

Appellant secondly contends that the statements of the Postal Inspector that he would not permit the list of investors to reach the hands of others constituted a misleading inducement to trick or cajole appellant into voluntarily pro-

ducing the list.[5] The record does not sustain this claim. It will not do to consider statements of the Inspector in isolation. Rather, his testimony and all other evidence material to this issue must be viewed in context. So considered, it is evident that appellant's request for assurances that the list would not be given to others stemmed from a desire that it should not fall into the hands of his competitors. In light of the investigative powers delegated to postal inspectors by 39 U.S.C.A. § 3522 and the fact that Inspector Trumbull requested the list to determine the possibility of criminal activity, it is inconceivable that he would have promised to refrain from resorting to the information received in connection with the investigation and ultimate prosecution, or that appellant understood such to be the case.

Furthermore, assuming the Inspector made the assurances attributed to him, we fail to comprehend how appellant was in any way adversely affected. The record clearly reveals that Inspector Trumbull contacted each of the investors who subsequently testified at the trial and that these original contacts were made during the Inspector's personal investigation and prior to the time the list was delivered to the United States Attorney

### III.

 Appellant's final contention is that the lower court erred in failing to instruct the jury that good faith of a defendant is a defense to mail fraud. This contention lacks merit in light of the instructions which were given without objection or requested additions by appellant. The trial judge's instructions to the jury enumerated all of the essential elements of the offense including that "there must be the underlying intent to defraud, and such scheme to defraud cannot be found in any mere expression of honest opinion as to prospects, or as to future performance, nor in mere 'puffing' or exaggeration in respect to articles which have substantial merit, if within any proper and reasonable bounds." As no timely objections were taken to the instructions given, absent plain error affecting the substantial rights of appellant, the claimed deficiency may not be assigned as error and should not be considered on appeal. F.R.Crim.P. 30 and 52(b). We are convinced that the instructions considered in totality correctly declared the law and that appellant was not prejudiced by failure of the instructions to focus upon his good faith.

We observe by way of summary that appellant concocted a clever and fraudulent scheme to lure persons requiring capital funds into paying him substantial amounts upon his assurances that he had unlimited sources who would provide the needed capital. His victims received nothing. The fraud practiced was aggravated and the mails were used to further the scheme. This case was tried free of prejudicial error. We affirm.

---

5. This court has specifically held that the Government agent is not required to inform the party under investigation that he is the subject of a criminal investigation. Cohen v. United States, supra. The conduct proscribed is affirmatively misleading the party into believing that the investigation is exclusively civil in character. Cohen v. United States, supra; White v. United States, supra. There is no indication in the record that Trumbull at any time affirmatively misled appellant into believing that the investigation was exclusively civil in nature or that appellant produced the list in reliance on any such belief, or that the information disclosed was induced by coercion, fraud or misrepresentation.