### HAGAN v. UNITED STATES (two cases).

(Circuit Court of Appeals, Sixth Circuit. February 15, 1924.)

Nos. 4003, 4004.

Counterfeiting ⬳3—Guilty knowledge cannot be inferred from negligent failure to make inquiries.

> Specific knowledge or belief of their counterfeit character is an essential element of the crime of passing counterfeit obligations of the United States, knowing them to be counterfeit, and while an intentional failure to pursue inquiries suggested to defendant by the circumstances, which would have resulted in such knowledge, may be deemed the equivalent of knowledge, an innocent, or even negligent, failure is not.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Criminal prosecutions by the United States against William Harris Hagan. Judgment of conviction, and defendant brings error. Reversed and remanded.

Pierre A. White, of Cleveland, Ohio (Calfee, Fogg & White, of Cleveland, Ohio, on the brief), for plaintiff in error.

M. A. McCormack, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before DENISON and MACK, Circuit Judges, and ROSS, District Judge.

MACK, Circuit Judge. The plaintiff in error was indicted and subsequently convicted for passing and conspiring to pass counterfeit war savings certificate stamps of the United States, knowing them at the time to be counterfeit. It is now urged in his behalf, both that there was no substantial evidence from which the jury could find that the defendant had this knowledge, and that the court erred in instructing the jury that the defendant was responsible and chargeable with the result which a reasonable inquiry into the genuineness of the stamps would have produced to him, whether or not he made the inquiry.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1. It is conceded that the plaintiff in error came into the possession of the stamps under very questionable circumstances. He was advised that the stamps had been stolen or surreptitiously taken from another person whose initials appeared thereon. The man, who, as it later appeared, had forged the stamps and who sold them to the plaintiff in error, told him that he (the seller) could not cash them, for the reason that the stamps were in another's name. The plaintiff in error undoubtedly knew that there was something wrong about the transaction, else he could not have purchased stamps, redeemable at par, at considerably less, irrespective of whether he bought them, as claimed by him, at 20 per cent., or, as testified to by the other party, at 80 per cent. discount.

Defendant was a printer; he knew that some forged stamps of this kind were supposed to be in circulation; from these and the circumstances surrounding his acquisition of them, the jury was reasonably justified in inferring guilty knowledge as to the forgery of the stamps in question. Guilty knowledge of the forgery was not, as it need not be, shown by direct evidence; the circumstantial evidence cannot be said to be unsubstantial.

2. The following are the pertinent portions of the charge, which, it is contended, permitted the jury to find a verdict of guilty, not on defendant's knowledge of the counterfeit character, but on the knowledge that he would have acquired if he had made reasonable inquiry:

"The court shall rather tell you what the law calls guilty knowledge, not what we may call guilty knowledge in common parlance. That distinction is very vital here. It is a matter of very great importance. It is the criterion of this case. And it is very important to the well-being of society that the distinction between what we ordinarily call guilty knowledge and what the laws calls guilty knowledge should be understood and appreciated.

"Guilty knowledge, under the legal definition, exists when the jury charged with answering the question is able to say that the individual under investigation should reasonably have known that the stamps were forged. In other words, you are not called upon to find here an actual definite state of knowledge of the falsity of these documents. * * *

"Your inquiry, then, is: What should he have considered at that time, concerning the genuineness of these obligations? * * *

"Now, the vital principle of inquiry touching matters of this kind is this doctrine, that I hope the jury will assimilate with clarity: A man who is seen to be put on inquiry touching the good faith of the transaction in which he is engaged is charged with the duty of pursuing that inquiry within the resources of his mental ability, and whether he does pursue that inquiry reasonably or not, he is responsible and chargeable with the result which a reasonable inquiry would have produced to him, by way of elucidating his mind as to the facts. Now, that is the cardinal principle applicable right here. * * *

"And then the question will be, if those elements appeal to you, to what extent in comparison with the appeal to you should they have appealed to one who had been in the printing business? Simply another one of the incidents of the case, one of the circumstances which surround the defendant, and from which a jury is to determine this one question, by considering what should reasonably have been, and if that should reasonably have been, what were reasonably the reactions of the defendant's mind, at the time he engaged in the final transaction upon which the charges are predicated."

While the last paragraph quoted from the charge tends to indicate that defendant's knowledge of the counterfeit character of the stamps was deemed essential to conviction, we are of the opinion that the jury

may well have been led to believe that the vital inquiry, as the court phrased it, was not defendant's knowledge, but the result which a reasonable inquiry, pursued within the resources of defendant's mental ability, would have produced to him as to genuineness of the stamps. In so charging, the trial judge, in our judgment, went too far. The failure to pursue such an inquiry may well be weighed by the jury in determining whether or not the defendant in fact knew or believed the stamps counterfeit. A willful and intentional shutting off of inquiry which would not merely reasonably suggest itself, but which in fact had suggested itself to defendant, and which he had intentionally failed to pursue lest it might lead to knowledge, may well be deemed the equivalent of knowledge within the statutory requirement. But an innocent or even negligent failure to pursue such an inquiry cannot be deemed the equivalent of the statutory requirement of knowledge or belief, at the time of possession or passing, that they were in fact, counterfeit. The specific knowledge or belief is made an essential element of the crime: not defendant's innocent or even negligent failure to inform himself by pursuing such inquiries as should reasonably or even as might have suggested themselves to him. Peterson v. U. S., 213 Fed. 920, 130 C. C. A. 398; Kasle v. U. S., 233 Fed. 878, 887, 147 C. C. A. 552; Pounds v. U. S. (C. C. A.) 265 Fed. 242, 245.

3. The record shows that the defendant excepted "to that portion of the charge that attempts to define the duty of investigation as to the genuineness of the instruments that was imposed upon the defendant." Thereupon the court said, "You mean the doctrine of inquiry which the court undertook to state?" to which counsel answered, "Yes, the nature of the inquiry." In our judgment, the exception to the charge was duly taken, as the exact character of the objection was made clear to the court. The situation is quite different from that in Schoborg v. U. S. (C. C. A.) 264 Fed. 10, where the charge was correct in its general aspect, and counsel merely reserved an exception, without bringing to the attention of the court the nature of the specific limitation they desired incorporated in the charge.

The judgment must be reversed, and the cause remanded for a new trial.