George Emerson **HART**, Appellant,

v.

**UNITED STATES of America**, Appellee.

No. 19071.

United States Court of Appeals Eighth Circuit.

June 20, 1968.

Rehearing Denied July 29, 1968.

Joseph J. DeRaad, Sioux City, Iowa, for appellant.

Steve Turner, Asst. U. S. Atty., Sioux City, Iowa, for appellee; Asher E. Schroeder, U. S. Atty., on the brief.

Before VOGEL, Senior Circuit Judge, and BLACKMUN and LAY, Circuit Judges.

VOGEL, Senior Circuit Judge.

George Emerson Hart, after a plea of not guilty, was convicted by a jury on a single count indictment charging a violation of 18 U.S.C.A. § 473, which proscribes dealing in counterfeit obliga-

tions or securities.[1] Upon conviction, Hart was sentenced to ten years but was not fined. He was allowed to proceed in forma pauperis and on this appeal makes two contentions: (1) The insufficiency of the government's evidence to sustain a finding of guilty; (2) that the trial court erred in failing to instruct the jury that the defendant should be acquitted if they found that the defense of entrapment was established. Finding no error, we affirm.

The uncontradicted evidence (Hart did not testify and he offered no evidence in his defense) established that on October 8, 1965, one Taarud was arrested in Minneapolis, Minnesota, for unlawful possession of counterfeit $20 Federal Reserve Notes. Taarud agreed to assist and cooperate with the Secret Service in identifying the source of his counterfeit notes. Accordingly, Taarud successfully arranged a meeting with George Hart, the appellant herein, whom he identified as his Sioux City, Iowa, contact. Taarud and Secret Service Agent Schaefer drove to Sioux City, where they met the appellant at Bishop's Cafeteria at 7:00 a. m. on October 15, 1965.

Taarud introduced Schaefer under an alias, stating Schaefer was interested in purchasing counterfeit money and that he wanted to see samples of the type of money Hart could provide. This meeting, which was observed by a second Secret Service Agent, Short, led to a second meeting at 9:30 a. m. that day in Taarud's room at the Holiday Inn Motel in Sioux City.

Appellant brought five samples of counterfeit $20 Federal Reserve Notes to the meeting at the Holiday Inn. Schaefer testified that these five notes were "sample" notes that Schaefer was interested in seeing for the purpose of showing to his "backers", who were interested in purchasing more notes from

the appellant at a later date. The five $20 bills were examined by Schaefer and Taarud. They carried the same serial number. Some looked a little better than others. Appellant explained that that was due to the aging process, the use of coffee to discolor them and age them. Schaefer tried to buy the five notes from the appellant, who was reluctant to sell them. He explained to Schaefer:

"A. Mr. Hart didn't want to give me the other three, or he did not want to sell them to me.

"Q. How do you know he didn't?

"A. Because I asked him.

"Q. You asked him what?

"A. I wanted to get all five for sample purposes, but he stated that he would like to take a ride to Omaha the following day to pass these notes or to get rid of them because he was a little short of cash at this time.

*    *    *    *    *    *

"Q. And you asked to buy five of them and he refused to sell you the other three?

"A. At this time, he did.

"Q. Are you saying that, Mr. Schaefer?

"A. Yes, sir.

"Q. Was there any dickering as to the price of these two that you bought? [Schaefer paid $10 for each.]

"A. Yes, there was. I thought it was too much, and he thought it was too much, too; but because of the fine quality of the note we felt they were worth the price he was asking."

The sale of two of the five notes from appellant to Schaefer was completed with the understanding that Schaefer would try to convince his "backers" in Minneapolis to return and purchase a large quantity of the notes. During the

---

1. "Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

conversation the appellant said to Schaefer:

"* * * that he had previously purchased $5,000 worth of these notes from his source in St. Louis for approximately $1,250."

Schaefer further testified:

"Q. Did he [appellant] ever indicate any other?

"A. And he also mentioned while we were talking about price that 15 years ago he purchased $40,000 worth of counterfeit notes for ten cents on the dollar which he thought the price to be too high at that time."

The arrangement for the purchase of a large amount of counterfeit currency from the appellant never materialized.

Appellant was arrested at Sioux City, Iowa, in December 1965 and was indicted by a grand jury on April 1, 1966, for selling the two notes in question "with the intent that the same be passed, published, or used as true and genuine", in violation of 18 U.S.C.A. § 473. Appellant was tried before a jury on September 27–28, 1967. His counsel moved for judgment of acquittal at the close of the government's case on the ground that the evidence was insufficient to sustain a finding that appellant committed the crime charged and that the evidence established entrapment as a matter of law. The motion was overruled and the appellant rested his case without testifying or submitting any evidence in his defense.

As to the appellant's first contention, he argues that throughout the entire course of their dealings both the appellant and Agent Schaefer knew and considered the two notes to be counterfeit, and that he never intended to sell the notes to Schaefer with the idea that they be used as true and genuine currency but, rather, the notes were to be mere samples so that the evidence fails to prove the requisite intent.

We believe the evidence in this case squarely presented a jury question as to appellant's intent in selling the counter-feit notes to Schaefer. The trial court gave the following instructions:

"Section 473, Title 18, of the United States Code provides in part that whoever * * * sells * * * transfers * * * or delivers any * * * counterfeited * * * obligation * * * of the United States, with the intent that the same be passed, published, or used as true and genuine is guilty of an offense against the United States."

"Defendant has been indicted for the crime of dealing in counterfeit obligations or securities of the United States. To convict defendant of this crime the Government must prove beyond a reasonable doubt that defendant sold, transferred, or delivered counterfeit obligations of the United States, with the intent that they shall be passed as true and genuine.

"Knowledge that the securities were counterfeited, and specific intent that the securities be passed as genuine, are essential elements of this crime."

"In order to convict the defendant under the Indictment, the burden is upon the Government to establish beyond a reasonable doubt each and all of the following propositions:

"1. That on or about October 15, 1965, at Sioux City, Iowa, the defendant sold, transferred, and delivered two counterfeited obligations of the United States, that is, $20 Federal Reserve Notes.

"2. That at the time the defendant knew that the notes were counterfeit.

"3. That in so doing the defendant acted with the intent that the said notes be passed as true and genuine."

The jury was entitled to draw reasonable inferences from the appellant's acts. True enough, he thought Schaefer was going to take the counterfeit bills to his "backers" in Minneapolis and that such display might result in a large order for counterfeit $20 bills. He must have known, and the jury could presume that he intended, that thereafter the bills would be passed as true

and genuine. Appellant, himself, intended passing the remaining three notes in Omaha the following day. It is true, as appellant contends, that both buyer and seller knew that the notes were counterfeit. That does not relieve the situation, as clearly pointed out in United States v. Panczko, 7 Cir., 1966, 367 F.2d 737; Riggs v. United States, 5 Cir., 1960, 280 F.2d 750, 752; cf., Rimerman v. United States, 8 Cir., 1967, 374 F.2d 251. We find and hold that there was sufficient evidence from which the jury could draw the conclusion that appellant intended the counterfeit notes to be passed as true and genuine.

Appellant's second contention is that while the trial court properly defined entrapment in its instruction 10–A and stated that entrapment was a defense, yet the court erred in not further instructing the jury that the defendant should be acquitted if they found that the defense of entrapment was established. Instruction 10–A was as follows:[2]

> "The defendant has interposed the defense of entrapment. To constitute a defense the entrapment must be unlawful. Unlawful entrapment means that the idea of committing the crime originated with the law enforcement officers or their agents rather than with the defendant, that he had no previous disposition to violate the law, and that they urged and induced him to commit the crime charged.

> "This defense is based on the policy of the law not to ensnare or entrap innocent persons into the commission of a crime.

> "The defense of unlawful entrapment is not established if the defendant was either engaged in similar crimes, or was ready and willing to violate the law, and the law enforcement officers or their agents merely afforded him the opportunity of committing the crime.

> Under these circumstances entrapment is lawful rather than unlawful, even though the law officers may have used a ruse or otherwise concealed their identity."

■ Appellant's contention here approaches the frivolous. It is impossible to consider instruction 10–A and the court's instructions as a whole, as they must be considered, and conclude that the jury was left with the impression that they could still convict even though they found that defendant was unlawfully entrapped. Additionally, we find it sufficient to note that the appellant has failed to preserve this issue in compliance with Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. When the trial court asked counsel for their exceptions and objections to the jury instructions prior to the jury retiring, counsel for the appellant specifically stated that he had no objections. The failure to properly object to the instructions before the jury retires to consider its verdict precludes raising any objection to the jury instructions on appeal. Friedman v. United States, 8 Cir., 1967, 381 F.2d 155, 161; Rimerman v. United States, supra, 8 Cir., 1967, 374 F.2d 251, 255, cert. denied, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992. See, also, the very recent case of Taylor v. United States, 8 Cir., 1968, 390 F.2d 278, 281–282, where Judge Blackmun discusses entrapment and failure of the defendant to take exception when an entrapment instruction has been omitted. Most certainly we do not consider this a situation wherein the plain error rule, Rule 52(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., should be invoked.

In passing, it might also be noted that a careful reading of this entire transcript does not indicate that a submissible case for entrapment was involved. The evidence clearly established that the appellant had been in the business of passing

---

**2.** This instruction was a model instruction set forth in Chapter 5, § 5.02 of the Manual on Jury Instructions in Federal Criminal Cases approved and adopted by the United States Court of Appeals for the Seventh Circuit in 1963. See 33 F.R.D. 523, 557.

counterfeit $20 bills; that he was witness Taarud's "Sioux City source" for counterfeited currency, and that he had other counterfeit notes in his possession which he intended to pass in Omaha the following day. He was no novice and he was not unlawfully entrapped.

This case is in all things affirmed.