**UNITED STATES of America, Appellee,**

v.

**Jimmy L. GOODWIN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**John GOODWIN, Jr., Appellant.**

**Nos. 71–1348, 71–1349.**

United States Court of Appeals, Tenth Circuit.

Feb. 25, 1972.

Rehearing Denied in No. 71–1348 April 12, 1972.

---

Judd L. Black, Oklahoma City, Okl., for appellants.

Robert D. McDonald, Asst. U. S. Atty. (Richard A. Pyle, U. S. Atty., with him on the brief), for appellee.

Before MURRAH, SETH and HOL-LOWAY, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from convictions for transferring counterfeit notes with the intent that they be used as true and genuine (18 U.S.C. § 473) under Count Three of the indictment, and for conspiracy to commit offenses against the United States (18 U.S.C. § 371) under Count Four of the indictment.

A third defendant, Miss Peggy Skaggs, was charged under separate counts. She was convicted of conspiracy with the Goodwins under Count Four, but does not appeal.

The relevant facts are as follows: Thomas Gunther, a secret service agent pretending to be a buyer of counterfeit notes, met with the Goodwins through the efforts of Johnny Johnson, an informant. Appellant, Jimmy Goodwin, presented Gunther with four counterfeit twenty dollar bills for which no money was paid and with the understanding they were to be returned. It was arranged that Gunther would buy thirty thousand dollars worth of the notes at twenty-five cents on the dollar, but apparently because the Goodwins were unable to make the necessary arrangements with their source, the transaction was never consummated. John Goodwin testified that the counterfeit money belonged to Johnson, that Johnson seemed desperate and scared, and that he and his brother Jimmy cooperated with Johnson because they thought he was in danger. Goodwin further testified that he and his brother had never dealt with counterfeit money and that they cooperated with Johnson only to make it appear that Johnson—not themselves—could produce the required quantity of bills.

Trial was set for February 10, 1971. Just prior to trial date Jimmy Goodwin was confined to a hospital suffering from a gunshot wound in the neck. On February 8th he filed a motion for continuance supported by affidavit of his attending physician, who stated that Goodwin was not ambulatory and could not bear the emotional strain of trial. The motion was denied, and appellant attempted to stay proceedings by petitioning this court for a writ of prohibition which was denied.

During the course of the trial the Government put on several witnesses to prove that Miss Skaggs, Jimmy Goodwin's stepdaughter, had passed counterfeit notes as alleged in separate counts in the indictment. In response to a question by the attorney for codefendant Skaggs of a Government witness, it was revealed that a deputy sheriff had discovered stolen goods in the Goodwin house over a year before.

The appellants assert four propositions: (1) It was error to overrule the motion for continuance; (2) it was error to permit the jury to hear evidence of unrelated criminal offenses; (3) that the evidence was insufficient to sustain a conviction under 18 U.S.C. § 473 of delivery with intent to pass; and (4) the verdict must be set aside because it is impossible to determine which alleged overt act the jury relied upon for a conviction on the conspiracy charge.

■ With regard to the attempt of appellant, Jimmy Goodwin, to obtain a continuance, it is undisputed that he was required to leave a hospital bed in order to attend his trial. It is further asserted that he was unable to testify because of his condition, and that because of his inability to aid counsel in his own defense, he was effectively denied his right to counsel under the Sixth Amendment. However, despite the affidavit of Mr. Goodwin's physician, it is apparent from the record that Mr. Goodwin was in fact ambulatory and able to converse. Nothing in the record reveals an abuse of discretion, and nothing in the record demonstrates prejudice to the appellant.

■ Appellants assert as their second proposition that it was prejudicial error for the trial court to have allowed the jury to hear the reference to stolen goods. On direct examination of a Government witness, it was revealed that a deputy sheriff had been watching the activities of Peggy Skaggs, the codefendant and stepdaughter of Jimmy Goodwin. On cross-examination counsel for Miss Skaggs elicited the fact that her activities had been watched solely because of her relationship to her father, whose house had been searched and in which various stolen goods were found. The appellant asserts that the reference to Miss Skaggs' "father" clearly denoted Jimmy Goodwin, her

stepfather, as the owner of the house. However, the record reveals that the trial judge emphasized the distinction in his admonition to the jury, and his instruction on the matter was prompt and explicit, concluded by individually polling the jurors. There was a question whether appellant, Jimmy Goodwin, or Peggy Skaggs' actual father was involved in the reference to stolen goods, but assuming that appellant was referred to, this incident was not prejudicial if the trial judge promptly ascertained that the jury could disregard it. McBride v. United States, 409 F.2d 1046 (10th Cir.) ; Mitchell v. United States, 126 F.2d 550 (10th Cir.). See also Pappas v. United States, 216 F.2d 515 (10th Cir.). We find no circumstances here where striking the testimony and admonishing the jury was not sufficient to render the error harmless as considered in Lawrence v. United States, 357 F.2d 434 (10th Cir.). We also find that the trial court did promptly ascertain that the jury could disregard it.

As their third proposition, appellants urge that it was error for the trial court to have overruled their motion for a judgment of acquittal on Count Three of the indictment. See Lucas v. United States, 355 F.2d 245 (10th Cir.). The count charged the appellants under 18 U.S.C. § 473, which reads:

> "Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

The act behind the charge was the giving of four counterfeit notes to agent Gunther, but in view of the fact that the notes were given as samples, and indeed were explicitly not to have been used because the serial numbers were "hot," the appellants urge that the act lacked the requisite intent to pass under section 473. The Government argues that the purpose of the transfer was an integral part of the obvious intent that notes would be ultimately sold and passed as genuine.

Considering the evidence in the light most favorable to the Government (Thomas v. United States, 409 F. 2d 730 (10th Cir.) ), we find that the proof is not sufficient to show a violation of 18 U.S.C. § 473 as charged against appellants in Count Three of the indictment. This section provides that the counterfeit notes be transferred or delivered with the intent that they be passed or used as genuine. There clearly was a delivery of the notes by appellant, Jimmy Goodwin, to the agent, but all concerned had an understanding that they would be examined by the prospective purchasers, and then returned to appellants. This proof does not meet the requirements of the statute as there was no intent that these notes would be passed or used as genuine notes on down a distribution chain. Instead the particular notes delivered were to be returned and not passed because of their serial numbers. No purchase of the notes was initially made by the agent; they were borrowed for a limited time. The contemplated delivery of a quantity of notes to be passed never took place. Under these circumstances, the conviction of appellants for violation of section 473 under Count Three cannot stand and must be reversed. It is, of course, not necessary under this section of the Act that the person charged personally circulate the notes. United States v. Benefield, 443 F.2d 61 (9th Cir.). Further, it makes no difference that both the Goodwins and agent Gunther knew that the notes were counterfeit. See Riggs v. United States, 280 F.2d 750 (5th Cir.) ; United States v. Panczko, 367 F.2d 737 (7th Cir.) ; Rimerman v. United States, 374 F.2d 251 (8th Cir.). However, the intent that the notes in question were to be used as genuine must be established.

In Hart v. United States, 396 F.2d 243 (8th Cir.), a very similar case factually, a secret service agent with the help of

an informant secured possession of two counterfeit twenty dollar notes for the express purpose of showing them to his presumed backers as samples. The agent, however, actually purchased the two notes; it was agreed that the notes would serve as samples, but no agreement to return them appears. The bulk purchase in the cited case also never materialized. It was there held that the question of intent to pass or use as true and genuine had been properly before the jury and that there was sufficient evidence from which the jury could have convicted. In Hart since there was no explicit arrangement that the two notes be returned, and because the court concluded that the notes would have been "passed" eventually, the case is distinguishable.

 Appellants' final argument is that it is impossible to determine upon which overt act the jury based its conspiracy conviction of appellants under Count Four. It is urged that we apply the doctrine of Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117. In Stromberg, the Court found one clause of a multi-clause statute unconstitutional, and because it was impossible to determine under which clause the defendant had been convicted, his conviction was set aside. The matter here is not comparable to Stromberg in that here there merely was a failure to prove one of the overt acts. It is necessary for conviction that a conspirator be found to have committed one of the overt acts in furtherance of the conspiracy. Jordan v. United States, 370 F.2d 126 (10th Cir.). The conspiracy count here charged a violation of 18 U.S.C. § 472, which was shown, as well as a violation of section 473. The instructions given by the court were proper on this related issue.

The case is reversed as to the conviction under Count Three of the indictment but in all other respects affirmed. The case is remanded to the trial court for resentencing.