**UNITED STATES of America,
Appellee,**

v.

**Gary Allen CASTENS, Appellant.**

**No. 72-1061.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1972.

Argued July 7, 1972.

Rehearing Denied Aug. 8, 1972.

James A. Pudlowski, St. Louis, Mo., for appellant.

Charles D. Kitchin, Asst. U. S. Atty., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

Defendant-appellant, Gary Allen Castens, was convicted on a one-count indictment charging him with violating 18 U.S.C.A. § 473 [1] by transferring eighteen falsely made and counterfeit $20 Federal Reserve Notes knowing their counterfeit nature and with the intent that these notes be passed as true and genuine obligations of the United States.

On appeal, Castens argues that: (1) The government failed to prove that appellant knew the bills in question were counterfeit; and (2) the government failed to prove that appellant intended the bills to be passed, published or used as true and genuine Federal Reserve Notes. We affirm.

The government's evidence was undisputed. Appellant offered no evidence and chose not to testify in his own behalf. The following facts were established.

On the morning of July 9, 1971, Robert Cheatah Franks, a long-time friend of appellant and resident of St. Louis, Missouri, received a letter from appellant, who was at that time in California. Upon opening the letter, Franks discovered eighteen $20 bills, along with a note stating, "Bob. Hide this in a good place. Hold until I see you. I hope to be there before the end of July. Thanks. Gary." Present in the Franks

1. "§ 473. Dealing in counterfeit obligations or securities

"Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeit, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

home at this time was Glenn Daniels, a friend of both appellant and Franks. Since Franks was going to the bank to deposit some of his own money in his personal checking account, Daniels suggested that he deposit the money received from appellant along therewith. Franks intended to write appellant a check for the money upon his return from California. At the bank it was discovered that the bills sent by appellant were counterfeit. The $200 deposited by Franks in his own right was genuine and was returned to him.

In his instructions to the jury, the trial court defined the elements of the offense as follows:

"First, that the Defendant transferred or delivered the\ obligations or securities of the United States mentioned in the evidence;

"Second, that said obligations or securities were false or counterfeit obligations or securities of the United States;

"Third, that at the time Defendant transferred or delivered said obligations or securities, he knew that they were in fact counterfeit or false obligations of the United States, and

"Fourth, that Defendant intended that said obligations or securities or any one of them be passed, published or used as true or genuine obligations or securities of the United States."

Appellant does not contest the jury's finding that the government proved the notes in question were counterfeit and that he transferred such obligations. Rather, he contends that the government failed to adduce sufficient proof to demonstrate that when he transferred these obligations he knew that they were counterfeit and that he did so with the intent that they be "passed, published or used as true and genuine obligations or securities of the United States."

 We agree with appellant that there is no presumption of guilty knowledge arising from either mere possession or transfer of a spurious obligation. United States v. Carll, 1881, 105 U.S.

611, 26 L.Ed. 1135; United States v. Musquiz, 5 Cir., 1971, 445 F.2d 963; Ruiz v. United States, 5 Cir., 1967, 374 F.2d 619; Rood v. United States, 8 Cir., 1965, 340 F.2d 506, cert. denied, 1965, 381 U.S. 906, 85 S.Ct. 1452, 14 L.Ed.2d 287; Carrullo v. United States, 8 Cir., 1950, 184 F.2d 743; United States v. Ruffino, 2 Cir., 1933, 67 F.2d 440; Zottarelli v. United States, 6 Cir., 1927, 20 F.2d 795, cert. denied, 1927, 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432. Nonetheless, knowledge of an obligation's counterfeit nature can be established by circumstantial evidence and the inferences created therefrom. Cf. Moore v. United States, 8 Cir., 1967, 375 F.2d 877, cert. denied, 1967, 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110.

In Paz v. United States, 5 Cir., 1967, 387 F.2d 428, the Fifth Circuit noted at page 430 of 387 F.2d:

"Guilt and knowledge seldom can be shown by direct evidence, and the jury may scrutinize the entire conduct of the defendant at or near the time when the money was passed."

Similarly, the Second Circuit in United States v. Sheiner, 2 Cir., 1969, 410 F.2d 337, cert. denied, 1969, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76, stated at page 340 of 410 F.2d:

" 'Knowledge in the mind of another is a subjective thing. It is not always capable of proof by positive or direct evidence. It may be inferred or gathered from the outward manifestations, by the words or acts of the party charged with knowledge and from the facts and circumstances surrounding or attendant upon the act with which it is charged to be connected. It may be proved by all the facts and circumstances disclosed by the evidence taken in connection with the case.'

"Anderson v. United States, 270 F.2d 124, 127 (6th Cir. 1959); see United States v. Carlson, 359 F.2d 592, 597 (3d Cir.), cert. denied, 385 U.S. 879, 87 S.Ct. 161, 17 L.Ed.2d 106 (1966). Thus, in cases of criminally passing counterfeit United States obligations,

guilty knowledge has been held properly inferable from a variety of circumstances, including the incredibility of the defendant's explanation of how she obtained the counterfeits, see McMillon v. United States, 272 F.2d 170 (5th Cir. 1959), cert. denied, 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769 (1960); cf. United States v. Petrone, 185 F.2d 334 (2d Cir. 1950), cert. denied, 340 U.S. 931, 71 S.Ct. 493, 95 L. Ed. 672 (1951), the existence of circumstances which should have made him suspicious of their genuineness, see Paz v. United States, 387 F.2d 428, 430 (5th Cir. 1967) (dictum; guilty knowledge held not proved); cf. Hagan v. United States, 295 F. 656 (6th Cir. 1924), or the number of counterfeits passed over a short period of time, see Ruiz v. United States, 374 F.2d 619, 620 (5th Cir. 1967); cf. United States v. Releford, 352 F.2d 36, 39 (6th Cir. 1965), cert. denied, 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473 (1966)."

See, also, United States v. Seay, 5 Cir., 1970, 432 F.2d 395; Moore v. United States, supra, 375 F.2d 877.

■ In a counterfeiting case a jury has the right to scrutinize the circumstances attendant to the transactions in question in order to determine whether appellant had the requisite guilty knowledge and intent. United States v. Carlson, supra, 359 F.2d 592. Cf. United States v. Releford, supra, 352 F.2d 36, cert. denied, 1966, 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473. Where such a determination is adverse to a defendant, we must accept all reasonable inferences that tend to support the verdict. Lewis v. United States, 8 Cir., 1967, 382 F.2d 232.

With that as background, we turn to a consideration of the evidence bearing on appellant's knowledge of the counterfeit nature of the eighteen $20 Federal Reserve Notes he sent to Franks.

■ We believe that the circumstances surrounding the transfer of the $20 bills from appellant to Franks fully justify the jury's determination that appellant knew the bills were counterfeit: (1) Appellant asked Franks to "hide" the money; (2) of the eighteen bills sent, all were $20 Federal Reserve Notes, six with identical serial numbers, six more with identical serial numbers, and five others with identical serial numbers; (3) appellant knew that Franks had a habit of secreting money from his wife; (4) both Franks and Daniels noticed that one of the bills was discolored; (5) appellant could have placed the money in a bank in California for safekeeping; (6) appellant could have sent the money to Franks by a safer means—e.g., via a postal money order; and (7) appellant could have specified that the money be placed in a safe place such as a bank. The jury's determination on this point may not be set aside.

■ Having established appellant's knowledge of the counterfeit nature of the $20 bills, we next turn to the more difficult question regarding appellant's intent to "pass, publish or use" these counterfeit $20 bills as genuine. It should be noted that the possessor of the bill does not have to pass it himself—it can be done by an intermediary, innocent or otherwise. United States v. Benefield, 9 Cir., 1971, 443 F.2d 61; United States v. Goodwin, 10 Cir., 1972, 455 F.2d 710.

In seeking reversal on this point, appellant places reliance on United States v. Goodwin, supra, 455 F.2d 710; while the government, in seeking an affirmance, relies on our own case of Hart v. United States, 8 Cir., 1968, 396 F.2d 243, cert. denied, 1968, 393 U.S. 1033, 89 S.Ct. 647, 21 L.Ed.2d 576. Because of their bearing on this crucial issue, an analysis of these two cases becomes necessary.

In *Hart*, one Taarud was arrested in Minneapolis, Minnesota, for unlawful possession of counterfeit Federal Reserve Notes. Taarud agreed to assist the Secret Service in determining the source of these notes. Taarud arranged

a meeting between Hart and a Secret Service Agent. The agent requested to see samples of the counterfeit money that Hart could provide. At a second meeting, Hart brought five "samples" for viewing by the agent. The agent sought to purchase these five notes, but Hart would sell him only two because, being short of cash, he wanted to pass the other three himself. Hart was subsequently arrested, tried and convicted under 18 U.S.C.A. § 473 for the sale of the two notes to the agent. On appeal, Hart argued that since the two bills were to be used for sample purposes and since both he and the agent knew the bills were counterfeit, he lacked the requisite intent to pass the bills as genuine. We rejected this contention in affirming Hart's conviction, holding:

"The jury was entitled to draw reasonable inferences from the appellant's acts. True enough, he thought [the agent] was going to take the counterfeit bills to his 'backers' in Minneapolis and that such display might result in a large order for counterfeit $20 bills. He must have known, and the jury could presume that he intended, that thereafter the bills would be passed as true and genuine. Appellant, himself, intended passing the remaining three notes in Omaha the following day. It is true, as appellant contends, that both buyer and seller knew that the notes were counterfeit. That does not relieve the situation, as clearly pointed out in United States v. Panczko, 7 Cir., 1966, 367 F.2d 737; Riggs v. United States, 5 Cir., 1960, 280 F.2d 750, 752; cf., Rimerman v. United States, 8 Cir., 1967, 374 F.2d 251. We find and hold that there was sufficient evidence from which the jury could draw the conclusion that appellant intended the counterfeit notes to be passed as true and genuine." 396 F.2d at 245–246.

In *Goodwin*, appellant gave a Secret Service Agent four counterfeit notes for which no money was paid, *the understanding being that the notes would be returned to him*. The notes were given as samples for the possible consummation of a larger transaction (as in *Hart*). *Goodwin requested that the notes in question be returned and not passed because their serial numbers were "hot"*. On appeal, the Tenth Circuit, while affirming Goodwin's conviction on a conspiracy count, reversed his conviction based on passing the four notes in question, holding:

"*There clearly was a delivery* of the notes by appellant, Jimmy Goodwin, to the agent, *but all concerned had an understanding that they would be examined by the prospective purchasers, and then returned to appellants*. This proof does not meet the requirements of the statute as *there was no intent that these notes would be passed or used as genuine notes on down a distribution chain*. Instead, the particular notes delivered were to be returned and not passed because of their serial numbers. No purchase of the notes was initially made by the agent; they were borrowed for a limited time. The contemplated delivery of a quantity of notes to be passed never took place. Under these circumstances, the conviction of appellants for violation of section 473 under Count Three cannot stand and must be reversed." (Emphasis supplied.) 455 F.2d at 713.

Additionally, the court in *Goodwin* distinguished *Hart* thusly:

"In Hart v. United States, 396 F.2d 243 (8th Cir.), a very similar case factually, a secret service agent with the help of an informant secured possession of two counterfeit twenty dollar notes for the express purpose of showing them to his presumed backers as samples. *The agent, however, actually purchased the two notes; it was agreed that the notes would serve as samples, but no agreement to return them appears*. The bulk purchase in the cited case also never materialized. It was there held that the question of intent to pass or use as true and genuine had been properly before the jury and that there was

sufficient evidence from which the jury could have convicted. In *Hart* since there was no explicit arrangement that the two notes be returned, *and because the court concluded that the notes would have been 'passed' eventually, the case is distinguishable.*" (Emphasis supplied.) 455 F.2d at 713–714.

We have no quarrel with the *Goodwin* holding. As pointed out by the Tenth Circuit, the cases are clearly distinguishable.

■ As has already been demonstrated, there was an abundance of evidence from which the jury could conclude that appellant knew the $20 bills to be counterfeit. Where there is no direct evidence as to intent, the jury is entitled to draw reasonable inferences from a defendant's actions, statements and writings. Here, the jury was entitled to draw reasonable inferences from appellant's note. What reasonable inferences may be drawn from appellant's note to Franks? First, the only *reasonable* inference from the directions to "hide" the bills "in a good place" is that appellant knew the spurious nature of the $20 bills. Second, the direction "hold until I see you" indicates quite clearly that he intended to pass the bills as genuine (for what other purpose would he want them held in hiding "until I see you"?) and that he felt St. Louis to be a safer place to pass the notes than California. By far the most probable and logical inference created from the evidence is that appellant either intended to pass the obligations himself or to use Franks as his agent for passing them upon his return from California.

Absolute knowledge of appellant's intent is, as we have said, generally impossible to demonstrate or establish. The facts as to intent to pass in *Goodwin* are inapposite. There, Goodwin gave specific instructions that the bills were not to be passed, but were absolutely to be returned because their serial numbers were "hot". *Goodwin* distinguishes *Hart* by noting that in *Hart* "* * *

the notes would have been 'passed' eventually * * *", while in *Goodwin* the notes in question were never to be passed. Here, however, all the circumstances indicate that appellant either intended to pass the bills himself upon his return to St. Louis or intended that his friend Franks pass them for him under his direction after he returned. Here, as in *Hart*, appellant did not disclaim the intent to have the counterfeit bills passed. Here the appellant's actions and statements are clearly and reasonably sufficient for the jury to conclude that he intended to pass the notes in question as genuine obligations of the United States. We are unable to find any other *reasonable* inference to be deduced from the directions in appellant's note. The case was properly submitted to the jury and the verdict, based as it is on substantial evidence, may not be set aside.

Affirmed.