**UNITED STATES of America, Appellee,**

v.

**Alfred Charles GRADY, Appellant.**

**No. 80–2163.**

United States Court of Appeals, Eighth Circuit.

Submitted June 19, 1981.

Decided Dec. 8, 1981.

Rehearing Denied March 2, 1982.

832

Doris Gregory Black, argued, St. Louis, Mo., for appellant.

Robert D. Kingsland, U. S. Atty., Kathianne Knaup, argued, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and COLLINSON,* Senior District Judge.

COLLINSON, Senior District Judge.

The appellant, Alfred Charles Grady, is challenging his conviction in the United States District Court[1] of attempting to pass and utter seven (7) falsely made and counterfeited Federal Reserve Notes with intent to defraud, all in violation of Title 18, United States Code, § 472. He was found guilty after a second jury trial on

---

* The Honorable William R. Collinson, Senior District Judge Eastern, and Western Districts of Missouri, sitting by designation.

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

November 25, 1980,[2] and was sentenced on December 5, 1980, to four (4) years' imprisonment. We affirm the conviction.

Evidence adduced at trial disclosed that appellant attempted to purchase two (2) money orders from an employee of the PX Liquor Store in Pagedale, Missouri, on the morning of August 21, 1980. The employee, Mr. James H. Moody, testified that he believed one of the $20 bills offered in payment for the money orders was counterfeit. Moody alerted a fellow employee, John Bratcher, who examined some of the other bills which Moody had received. He subsequently testified that seven (7) of them were "too stiff" and "too thick" and that there were "no visible fibers in the paper." While Bratcher was examining these bills, Moody called the police.

The police officer who answered Moody's call located Grady inside the liquor store. He requested that he step outside into the parking lot and produce identification. He then asked appellant if the counterfeit bill belonged to him. After Grady indicated that it did, the officer placed him under arrest, advised him of his rights and transported him to the Pagedale Police Station. Once at the station, appellant was again advised of his rights and signed a "warning and waiver" form prior to answering more questions about the bills. When this interview had been completed, Grady was surrendered to a Secret Service agent along with the seven (7) purportedly counterfeit bills.

Grady raises six issues on appeal which, he maintains, entitle him to a new trial. Appellant's first argument is that the trial court erred in overruling his motion to suppress statements and evidence which was filed in his first trial. Grady maintains that before he was questioned outside the PX Liquor Store by the police officer, he should have been given his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant contends that the failure of the officer to so advise him is a basis to suppress his statements as to the ownership of the bills and all the other evidence obtained by means of that statement. The Court rejects this argument.

*Miranda* concerns itself with the need for special safeguards in the case of an

> incommunicado interrogation of individuals in a police-dominated atmosphere resulting in self-incriminating statements without full warnings of constitutional rights.

*Id.* at 445, 86 S.Ct. at 1612. Subsequent decisions of the United States Supreme Court have emphasized that it is the custodial nature of the interrogation which keys *Miranda*. *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). But the custodial situation referred to in *Miranda* concerned the isolation of a suspect in unfamiliar surroundings "for no purpose other than to subjugate the individual to the will of the examiner." 384 U.S. at 457, 86 S.Ct. at 1619; *United States v. Jiminez*, 602 F.2d 139 (7th Cir. 1979); *United States v. Marzett*, 526 F.2d 277 (5th Cir. 1976).

These proscribed circumstances do not compare with those in the case at bar. Grady was not under arrest at the time the questions were propounded to him, nor was he in the type of custodial surroundings which concerned the *Miranda* court. As stated in *United States v. Hamlin*, 432 F.2d 905, 908 (8th Cir. 1979):

> The warnings delineated in *Miranda* do not apply to a situation where, as here, the subject . . . is not deprived of his freedom in any significant way. "General on-the-scene questioning as to facts surrounding a crime *or other general questioning* of citizens in the fact-finding process is not affected by our holding." (Citations omitted.)

Appellant had been asked to accompany the officer outside to the parking lot of the liquor store and produce identification. It can hardly be said that he was interrogated in "police-dominated" surrounding or that he was even in the custody of the officer at

**2.** Appellant's first trial ended in a mistrial on November 11, 1980.

the time he answered the question about the bills. Moreover, the fact that Grady was arguably the focus of the investigation at that point does not by itself trigger *Miranda*. As the Supreme Court held in *Beckwith v. United States*, 425 U.S. 341, at 347, 96 S.Ct. 1612, at 1616, 48 L.Ed.2d 1 (1975), *Miranda* and subsequent cases, principally *Mathis, supra*, squarely base their holdings on the custodial aspects of the situation, not the subject matter of the interview.

For these reasons, we feel that the trial court did not err in denying Grady's motion to suppress.

Appellant's next contention is that the Government engaged in prejudicial misconduct during the cross-examination of a defense witness. The appellant called a Mr. Rozell Johnson as a character witness. He testified as to his acquaintanceship with the appellant as a member of the Black Retailers Association. Johnson also testified that he had loaned Grady $25,000 at one time and that Grady had repaid him. On cross-examination by the government, the following exchange occurred:

Q. Mr. Rosell, is your whole business a clothing store?

A. Yes.

Q. You don't have any businesses on the side?

A. No.

Q. No drug businesses?

A. No what?

No objection to this line of questioning was made at trial so the matter was not properly preserved for appeal. Fed.R.Evid. 103(a)(1). However, the Court may review this aspect of trial for plain error, pursuant to Fed.R.Crim.P. 52(b).

■ Plain error, in this context, is generally termed as that which has a substantial effect upon the rights of a criminal defendant. *Berger ·v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

We find that this question did not substantially prejudice the rights of the appellant and was therefore harmless. It was only asked once and was not referred to in the government's closing argument. This isolated incident is not similar to the egregious and repetitive conduct contemplated and proscribed in *Berger, supra; cf. Michelson v. United States*, 335 U.S. 469, 481, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948).

Appellant's next contention is that the trial court erred in permitting the government to cross-examine him and his character witnesses about arrest charges later dismissed. A review of the transcript reveals that such cross-examination of past arrests only occurred with regard to Mr. Terry Lewis, appellant's former counsel. He was called as a government witness to testify that he had never paid Grady $500 for services as a consultant. On cross-examination, appellant's counsel elicited testimony from Lewis that Grady had a good reputation in the community for truth and honesty.

After this testimony, counsel approached the bench where the government requested the Court's permission to cross-examine Mr. Lewis "as to his knowledge of three (3) arrests of the defendant which . . . reflect upon the defendant's truth and honesty." [3] The Court, after consideration of Fed.R. Evid. 405(a), determined that such examination was appropriate, reasoning that this line of questioning elicits the witness' knowledge of defendant's reputation and shows whether that knowledge influenced the witness' opinion in any way. We concur in the trial court's ruling.

■ The Court of Appeals will "rarely and only on a clear showing of prejudicial abuse of discretion disturb the rulings of the trial court on this subject." · *Michelson v. United States, supra*, at 335 U.S. 480, 69 S.Ct. 221. This Court has previously held in *Mullins v. United States*, 487 F.2d 581, 585 (8th Cir. 1973), that

**3.** The first arrest was for filing a false employment security claim in St. Louis County. The second arrest was as a fugitive on an outstanding St. Louis County warrant. The third arrest again resulted in a fugitive warrant issued by the City of St. Louis, involving an alleged false statement to the County Police that appellant had paid a city fine.

[a] character witness may be cross-examined as to an arrest of defendant whether or not it culminated in the conviction and may even be asked about rumors concerning an event not too remote in time. As stated in *Michelson*: "[D]efendants in general ... have no valid complaint at the latitude which existing law allows the prosecution to meet by cross-examination an issue voluntarily tendered by the defense." *United States v. Michelson, supra*, at 45, 69 S.Ct. at 223 (citation omitted).

■ We find that this cross-examination met an issue "voluntarily tendered by the defense" and was therefore proper. Two of the previous arrests inquired about concerned appellant's honesty and truthfulness and the Court can discern "no prejudicial abuse of discretion" by the district court in allowing the government to conduct cross-examination based upon them.

[6] Appellant's next contention is that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence. Grady submits that the evidence is insufficient to sustain a conviction for attempting to pass and utter a counterfeit note with intent to defraud. He argues that although the government may have been able to prove that he attempted to pass and utter the $20 bills, it has failed to prove that he had the requisite intent to defraud, i.e. knowledge that the bills were counterfeit.

This Court has a standard for testing the propriety of a motion for judgment of acquittal. In *Tanner v. United States*, 401 F.2d 281, 285 (8th Cir. 1968), *cert. denied*, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969), we held that a trial court must view the evidence in a light most favorable to the government, along with inferences fairly drawn therefrom, and determine if there is substantial evidence from which a jury could find a defendant guilty beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). This standard is to be applied to each element of the offense.

In *United States v. Pitts*, 508 F.2d 1237, 1240 (8th Cir. 1974), we held that

[i]n a counterfeiting case the government must also prove that the defendant knew the bills were counterfeit, *United States v. Musquiz*, 445 F.2d 963, 966 (5th Cir. 1971), and that he had a general intent to defraud unknown third parties with those bills, *United States v. Wilkerson*, 469 F.2d 963, 969 (5th Cir. 1972), *cert. denied*, 410 U.S. 986, 93 S.Ct. 1515, 36 L.Ed.2d 184 (1973). These essential elements of the crime are seldom provable by direct evidence. *United States v. Castens*, 462 F.2d 391, 394 (8th Cir. 1972).

Because these elements require a finding as to the defendant's state of mind at a given moment, a jury in the usual case must rely on circumstantial evidence in order to determine whether the requisite mental condition existed. In *United States v. Cervantes*, 466 F.2d 736, 739–740 (7th Cir.) *cert. denied, Panas v. United States*, 409 U.S. 886, 93 S.Ct. 108, 34 L.Ed.2d 143 (1972); *United States v. Kimbrough*, 481 F.2d 421, 423–424 (5th Cir.), *cert. denied*, 414 U.S. 1114, 94 S.Ct. 845, 38 L.Ed.2d 741 (1973). In reaching its verdict, the jury is entitled to scrutinize and make reasonable inferences from defendant's conduct and from all facts surrounding the incident in question. *Castens, supra*, 462 F.2d at 393–394; *Kimbrough, supra*, 481 F.2d at 424; *United States v. Sheiner*, 410 F.2d 337, 340 (2nd Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 74 (1969).

A thorough review of the record reveals that there is ample evidence from which a jury could find that the defendant had knowledge of the bills' counterfeit character. The principal components of this evidence are statements made by appellant about how he obtained the counterfeit money. He told the counter clerk at the PX Liquor Store that he had obtained the bills from a bank. He later told a Secret Service agent that he had received the bills as part of a $500 payment which was wired to him through Western Union. At his first trial, Grady testified that he may have obtained the counterfeit bills in a dice game in Kinloch.

These inconsistent statements, coupled with the fact that appellant attempted to pass seven (7) patently counterfeit bills, constitutes substantial evidence from which a jury could find, beyond a reasonable doubt, that appellant knew the bills were counterfeit, and that he intended to utter them.

Grady next maintains on appeal that the trial court erred in permitting the government to examine him as to his employment and income for various years. We cannot agree. The Court notes that the government asked appellant only one question about his income. On cross-examination, the assistant United States attorney asked, "So you had no income from any of your occupations?" No objection was interposed to this question. Grady stated that he had received no income from his occupation "this year."

▮▮▮ Since no objection was made to this question, it is not properly preserved for appeal. Fed.R.Evid. 103(a)(1). Moreover, we find no plain error resulting from the question, in light of the fact that appellant's financial dealings were explored on direct examination. Fed.R.Evid. 611(b). Also this question was designed to test the credibility of the witness with respect to his financial condition, and as such, was proper under Fed.R.Evid. 611(b).

▮▮▮ Appellant's final contention on appeal is that the trial court erred in failing to declare a mistrial after discovery that a juror's husband was present in the courtroom during a hearing on a motion to suppress identification evidence.

On November 24, 1980, the Court conducted a hearing on a motion to suppress identification evidence. This hearing, naturally, was held outside the presence of the jury. The government sought to introduce evidence at trial that appellant had passed a counterfeit bill at a clothing store. The store clerk, however, could not identify Grady as the one who passed the bill, so the Court continued the hearing on the motion to suppress. Shortly after this matter was continued, it was discovered by defense counsel that the husband of a juror, a Mr. Street, was present in the courtroom during this proceeding. Upon learning this, appellant made a motion for mistrial which the court denied.

Immediately thereafter, the court cautioned the husband that he would be held in contempt of court if he discussed the proceeding with his wife. Before recessing that day, the Court gave the jurors the following admonition:

The Court: We are going to recess until tomorrow morning at 10 o'clock. Please bear in mind the admonition I have given heretofore. You are not to talk to anybody, especially to your husbands about this case during the pendency of this trial.

I'm talking to you, Mrs. Street.

Mrs. Street: I knew who you were talking to.

The Court: I am sure that you will abide by it and so will he because I am going to have to ask you tomorrow morning about it. I see two super reporters that have been in the courtroom most of the day so there is probably going to be something in the paper about this case, so don't read it. Get somebody to put it aside for you.

The next morning, the court inquired of Mrs. Street if there had been any discussion with her husband about the case.

The Court: I take it you didn't talk about the case?

Mrs. Street: Oh, no.

The appellant offers no evidence of the Streets' disregard of the Court's instruction. Grady does contend, however, that since Mr. Street was threatened with contempt, it is unreasonable to assume that no discussion occurred and that he abided by the Court's instruction, especially in light of the fact that he did not return to view the proceedings the next day. This Court, however, will not imply misconduct where no evidence of misconduct exists.

For the foregoing reasons, we find that appellant received a fair trial and that no

grounds exist to set aside his conviction for passing the counterfeit bills.

Affirmed.