56 F.3d 74
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff - Appellee,
v.
Luke JERNIGAN, Defendant - Appellant.
 No. 94-10337.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Apr. 5, 1995.
Decided May 4, 1995.
 
 Before: BRUNETTI, THOMPSON and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Luke Jernigan appeals his conviction and sentence for passing counterfeit notes, in violation of 18 U.S.C. Sec. 473, and conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. Specifically, Jernigan contends that the district court erred in refusing to give a lesser-included jury instruction, denying his motion to suppress statements, admitting certain evidence at trial, and enhancing his sentence for possession of a firearm. He also argues that there was insufficient evidence to sustain his conviction for passing counterfeit notes. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 I.
 
 3
 Jernigan claims that the district court erred by refusing to give a "lesser-included" jury instruction on "Conspiracy to Knowingly and Intentionally Possess Cocaine for Personal Use." To show entitlement to a lesser-included instruction, Jernigan must meet a two-step test. United States v. Dikane, 17 F.3d 1192, 1200 (9th Cir. 1994). First, he must demonstrate that the offense on which the instruction is sought is a lesser-included offense of that charged; and second, he must show that a rational jury could conclude that he was guilty of lesser-included offense, and not the greater. Id.; United States v. Perdroni, 958 F.2d 262, 268 (9th Cir. 1992). The district court's decision as to whether the evidence would permit a jury to convict on the lesser offense and acquit of the greater is reviewed for abuse of discretion. Id. (citing United States v. Torres, 937 F.2d 1469, 1476 (9th Cir. 1991)).
 
 
 4
 The government argues that Jernigan failed to demonstrate that conspiracy to possess cocaine for personal use is a lesser-included offense of conspiracy to possess cocaine with intent to distribute. We need not reach that issue, because Jernigan has failed to demonstrate that a rational jury could have found him guilty of conspiracy to possess for personal use, while acquitting him of conspiracy to possess for distribution.
 
 
 5
 The only evidence of a conspiracy at trial was a conspiracy to possess for distribution. Co-defendants Minton and Jackson both pleaded guilty to and testified about a conspiracy to possess for distribution. They denied that they intended to use the cocaine for personal use. Moreover, testimony of the agents established that the three co-defendants were going to purchase 10 kilograms of cocaine, an amount inconsistent with mere personal use. Finally, at trial, Jernigan denied any conspiratorial agreement with Minton and Jackson. On this record, no rational jury could conclude that there was an agreement to possess cocaine for personal use, rather than an agreement to possess for distribution. Any alleged error in the jury instructions was not reversible.
 
 II.
 
 6
 Jernigan also challenges the district court's denial of his motion to suppress statements made to Agent John Hoebe. We review de novo the district court's ultimate determination that a confession was voluntary and that a defendant voluntarily waived his Miranda rights. See Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir. 1991). Factual findings underlying the district court's conclusion, such as what the defendant was told, are reviewed for clear error. United States v. Bland, 908 F.2d 471, 472 (9th Cir. 1990).
 
 
 7
 Before Jernigan spoke with Hoebe, he was interviewed by Agents Phil Elston and James Brown. Jernigan's suppression argument is based upon the fact that he refused to sign a statement prepared by Elston, and his contention that he then requested an attorney. According to Jernigan, he unequivocally invoked his right to remain silent and his right to an attorney, which were violated when Hoebe later conducted his interview. Although it is clear that Jernigan refused to sign the statement, it is disputed whether Jernigan gave a reason for that refusal or requested an attorney. Both Elston and Brown testified that they did not recall Jernigan giving them a reason for his refusal to sign. Elston, Brown and Hoebe all unequivocally testified that had Jernigan requested an attorney, he would not have been subjected to further questioning. Finally, Hoebe testified that he re-advised Jernigan of his Miranda rights, and Jernigan indicated he understood those rights and proceeded to give him a statement.
 
 
 8
 Jernigan relies on United States v. Barnes, 432 F.2d 89 (9th Cir. 1976) and United States v. Lopez-Diaz, 630 F.2d 661 (9th Cir. 1990). However, those cases involved a defendant who unequivocally invoked his right to remain silent by expressly stating that he did not want to talk. Jernigan's refusal to sign the statement prepared by Elston is not an unequivocal and express statement that he did not want to talk to Hoebe. See United States v. Davis, 114 S. Ct. 2350, 2355 (1994). It is not even clear that Hoebe knew Jernigan refused to sign the statement. Moreover, according to Hoebe, Jernigan was perfectly willing to talk to him. Even if Jernigan unequivocally invoked his right to remain silent before Elston and Brown, his statements to Hoebe need not be suppressed because he was re-read and voluntarily waived his Miranda rights. See United States v. Hsu, 852 F.2d 407 (9th Cir. 1988) (questioning after defendant invoked right to remain silent did not violate Fifth Amendment, where agent who conducted subsequent questioning did not know about earlier invocation, re-read Miranda rights and obtained valid waiver).
 
 
 9
 Finally, given the evidence, it cannot be said that Jernigan unequivocally invoked his right to an attorney at any time. See Davis, 114 S. Ct. at 2355. The district court found the testimony of the agents more credible than Jernigan's, and it was not erroneous for the district court to accept their version of the events. See Hsu, 852 F.2d at 411.
 
 III.
 
 10
 Jernigan argues that the district court should not have admitted the handwritten notes Hoebe took when he interviewed Jernigan. These notes were offered by the government to rebut Jernigan's testimony that he never made a statement to Hoebe. We review the district court's evidentiary ruling for abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir. 1994).
 
 
 11
 It is unclear from the record what basis the district court relied upon in admitting the notes. However, we need not address the issue, because even if the district court erred in admitting the notes, the error was undoubtedly harmless. See United States v. Yin, 935 F.2d 990, 994 (9th Cir. 1991) (nonconstitutional evidentiary error is not reversed for abuse of discretion unless it more likely than not affected the verdict). During the defense case, Jernigan's counsel had already elicited the information contained in the notes by reviewing Hoebe's formal report. Moreover, there was a significant amount of evidence of Jernigan's participation in the crimes, including Elston's testimony regarding the incriminating statements Jernigan had made to him. We therefore find no reversible error in the admission of the notes.
 
 IV.
 
 12
 Jernigan also appeals the two-level enhancement which the district court applied to his sentence because a fully-loaded handgun was found in the glove compartment of co-defendant Jackson's car. The district court determined that Jernigan should have reasonably foreseen that his co-defendant would have a gun at the June 4, 1992 meeting with the agents. We review this factual finding for clear error. United States v. Willis, 899 F.2d 873, 874 (9th Cir. 1990); United States v. Garcia, 909 F.2d 1346, 1349 (9th Cir. 1990).
 
 
 13
 In Garcia, we held that the co-defendant's possession of a gun, which was hidden under a floor mat of the co-defendant's car, was reasonably foreseeable to the defendant. There was no evidence that the defendant actually knew about the gun, and the record did not disclose how well the co-defendants knew each other. Nevertheless, we determined that possession of a gun was foreseeable because the co-defendants were engaged in a major narcotics transaction, involving 17 kilograms of cocaine. Garcia, 909 F.2d at 1349-50.
 
 
 14
 In this case, the district court made an express finding that Jernigan should have foreseen that a gun would be involved. As in Garcia, the court relied on the fact that this was a major illicit transaction involving 10 kilograms of cocaine and a significant amount of counterfeit money. The only distinction Jernigan offers between this case and Garcia is that there were not actually drugs present at the June 4 meeting. However, the association of guns with drug trafficking is not solely dependent upon there being a transfer of drugs. The evidence here suggests that when the co-defendants met to negotiate the major drug deal, they were in possession of a significant amount of counterfeit money. On this record, we do not find clear error in the district court's determination that it was foreseeable to Jernigan that a co-defendant would have a gun.
 
 
 15
 Because the district court made this foreseeability finding, we distinguish this case from United States v. Kelso, 942 F.2d 680 (9th Cir. 1991). In that case, the district court concluded that Kelso deserved a two-level enhancement because he constructively possessed his co-defendant's gun, not because he should have foreseen that his co-defendant would have a gun. Id. at 681. We noted, however, that the enhancement "would have been appropriate if the district court had found that possession by Kelso's co-conspirator had been reasonably foreseeable to Kelso." Id. at 682, n. 3.
 
 V.
 
 16
 Finally, Jernigan argues that there was insufficient evidence to convict him of passing counterfeit notes, under 18 U.S.C. Sec. 473. Because he failed to renew his motion for judgment of acquittal at the close of all the evidence, we review for plain error. See United States v. Winslow, 962 F.2d 845, 851 (9th Cir. 1992). And, in resolving the sufficiency of evidence issue, "the government is entitled to all reasonable inferences which may be drawn from [the evidence], when viewed in the light most favorable to the government." Id. (quoting United states v. Davis, 932 F.2d 752, 761 (9th Cir. 1991)).
 
 
 17
 Jernigan concedes that the intent element of Sec. 473 may be satisfied by proof of a general intent to defraud unknown third parties in the distribution chain; there is no requirement that the immediate purchaser of the notes be defrauded. See e.g. United States v. Wyatt, 611 F.2d 568, 570 (5th Cir. 1980); United States v. Russo, 540 F.2d 1152, 1155 (1st Cir. 1976); cf. United States v. Benefield, 443 F.2d 61, 62 (9th Cir. 1971) (it is not necessary that the defendant personally circulate counterfeit bills; he may give them to a confederate with the intent that they be passed as genuine). Nevertheless, he claims that there was no such intent here because Jackson only gave the counterfeit money to the undercover agent to inspect for quality.
 
 
 18
 Jernigan's argument is based on two cases, United States v. Wilkerson, 469 F.2d 963, 969 (5th Cir. 1972) and United States v. Goodwin, 455 F.2d 710, 713 (10th Cir. 1972), which held that if there is a specific understanding or agreement that certain counterfeit bills are to be used merely as samples, and then returned, the intent element of Sec. 473 is not satisfied. But Jernigan points to no evidence in the record which establishes an understanding or agreement that the counterfeit notes given to the agent would be returned. Instead, he argues that "[i]t was implied that if the notes were not of a good quality or if the Defendants did not have sufficient notes to purchase the 10 kilograms of cocaine, the notes would be returned." This argument necessarily recognizes that if the notes were of a good quality and if there were sufficient notes, they would be kept by the agent for subsequent distribution. A jury could reasonably infer from the facts that it was defendants' intent and expectation that the bills given to the agent would eventually be passed to unknown third parties as genuine.[1] See United States v. Hart, 396 F.2d 243 (8th Cir. 1968) (no explicit arrangement between agent and defendant that notes would be returned and jury could infer that defendant intended that notes would later be "passed"); see also United States v. Castens, 462 F.2d 391 (8th Cir. 1972); United States v. Anzalone, 626 F.2d 239 (2nd Cir. 1980). Taking the evidence in the light most favorable to the government, we find no plain error.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The jury could have also inferred an intent to defraud from the evidence that Jernigan gave another undercover agent a sample counterfeit $100 bill on June 3, 1992. Nothing in the record discloses an understanding that the bill was to be returned to Jernigan